John Rhodes again representing Michelle Wing. So this is my third time with Miss Wing and our circuit's fourth, just as an observation. Is the fourth time the charm or not? I hope so your honor. She's serving an 84 month sentence for the Spokane prosecution. That sentence was actually vacated recently however and resentencing is set before Judge Nielsen on November 23rd. Hopefully she's gotten the message. You can understand why Judge Malloy was upset with her. Absolutely your honor. I believe the whole courthouse, particularly the probation office, was very frustrated by Miss Wing. But at a common sense level and more importantly at a level of statutory interpretation, Judge Malloy revoked a term of supervision that had not commenced. He first revoked... Did she get a free pass then for all this other conduct that occurred during that time? No your honor because she was prosecuted in Spokane. She pled guilty before Judge Nielsen. As I mentioned she received an 84 month sentence which is now in remand so I don't know what sentence she's going to receive on remand but certainly she's not going to get a free pass. She's been in custody this entire time and based on the sentiments expressed by Judge Thomas I would be shocked if she gets released in November. Instead she's going to have years and years to serve regardless of the resolution in this case. The problem in this case is that Miss Wing supervised release was revoked first in June of 2008. She was in prison for three months. She began serving that term in August of 2008. The term was set to expire. In other words she was going to be released from custody of the Bureau of Prisons on November 26th of 2008. On November 25th a warrant issued based on a petition alleging that she had violated the terms of her supervised release term and so rather than being released on November 26th she was transferred from the custody of the Bureau of Prisons to the United States Marshal in this district. She was then brought and that was on the warrant issued by Judge Malloy as well as a warrant issued out of Spokane before she was returned to Missoula on the supervised release revocation warrant. She was prosecuted first in Spokane where she ultimately pled guilty and received an 84 month sentence. Then she was brought to the United States Marshal during this entire course of time. She's in custody and the revocation proceeding occurred there and Judge Malloy revoked the new term of supervised release that he had imposed in June of 2008. The problem being that that term, the supervised release, had never commenced. If you take the 3583E that the term, in quotes, continues to have some effect, in quotes, if we apply that principle then isn't it possible since there's a tolling of the first term during the incarceration period that it still had some effect and the first term was still viable at the time that Judge Malloy took the action. The first term of supervised release that had already been revoked, is that what you're referring to? Correct. Judge Malloy revoked that term, so it no longer existed. He revoked it without knowledge of what she had done during that period. I would agree with that. And so I guess my question is does Cornell Johnson inform us in any way of whether the revocation, which was also an issue as you know in Cornell Johnson, is somehow suspended in the ether to some extent and the judge could still reach back and take action on what she did during the time of the first period? First, as a matter of fact, Your Honor, Judge Malloy was very clear he was revoking the new second term of supervised release. So that's not what happened. Okay. First, as a matter of law, we would maintain that that's not permitted. The reason being that in June of 2008 when that first term of imprisonment followed by the second term of 33 months. And the law is clear that when a supervision term is revoked and the defendant, the individual is sent to prison, they are serving not their original prison sentence, they are serving that supervision term in prison, in lieu of being in the community. So we would argue that if somehow in the future there was some attempt to reach back to that first term, that that's not legally permissible. But the fact remains in this case, that's not what happened. Judge Malloy was very clear that he was revoking the new 33-month term of imprisonment. And Section 3583 Subsection A is very clear that the term of supervised release begins after imprisonment. And 18 U.S.C. 3624 Subsection E is very clear, quote, term of supervised release commences on the day the person is released from imprisonment, end quote. Well here, Ms. Wayne was never released from imprisonment, end quote. The term of supervised release does not run during any period in which the person is in prison, end quote. She was in prison this entire time, so the new term of supervised release never commenced, also in 3624. So did you raise this in front of Judge Malloy? No, Your Honor. So what are we to make of that? Plain air review? It's not plain air, Your Honor, because it's a jurisdictional claim, and jurisdictional claims, as the government has agreed, are always subject to deniable review, regardless of when they are raised. And this is absolutely my fault for not thinking of this before Judge Malloy, and I take complete responsibility for that. Nonetheless, it's deniable review applies, and the government's agreed with that. Also in Section 3424, 3624 Subsection E, the statute talks about the individual being released from custody to the supervision of the probation officer. That never occurred. And until the person is supervised by the probation officer, the supervised release term has not taken effect, because there's no supervision. The defendant, the individual, is not subject to the terms and condition of supervised release. And a good example of that, a standard condition, and a condition in this case, is that Ms. Wing not associate with known felons, and an officer supervises her to assure that doesn't happen. Well, obviously, when she's in custody at Sea-Tac, and then is transferred to the marshals, and ends up at a jail in Spokane, and then a jail in Missoula, she's certainly associating with known felons. So that's an example, at a practical level, that there was no term of supervised release to revoke. I'd like to take my remaining time for rebuttal. Thank you. We have one from the government. Good morning, Your Honors. My name is Chris McLean. I'm the Assistant U.S. Attorney in Montana's Missoula office. I think I would just start my arguments this morning by making an observation, or perhaps wondering out loud, of if the defense would be making the same argument if Judge Malloy had let Wing get out of jail before signing that petition, and having her arrested. I think Mr. Rhodes, at that point, would say, well, under their argument, the period of release would be gone if by 5 minutes, if by 10 minutes, or a couple hours. And he wouldn't be making this jurisdictional argument. And from the government's perspective, that doesn't make any practical or legal sense in the context of the supervised release statute. But what is the government's position? Are you relying upon the, that we have jurisdiction based upon, or the district court had jurisdiction based upon, the first supervised sentence, or the second one? Your Honor, I think it's clear from the record that Judge Malloy was revoking the second supervised release. The petition states on its face, it's going to commence in two days, and he signs the warrant. So we should not bother ourselves with any continuation of the first supervised sentence. I think I'm stuck with what we wrote in our brief, and that's the position that we took. But I think that the case law the court has mentioned, the Cornell-Johnson case, would allow this court to make that consideration. What did happen to that? Can we even consider the first, notwithstanding Cornell-Johnson, in light of the realities of what happened on the ground here? I think it's important that you do. I mean, when she had her sentence revoked on June 6th of 2008, Judge Malloy actually allowed her to self-report. And during the course of that three-month period until August 29th, she continued to commit the crimes that formed the basis for her second revocation. So that period of time, what was going on? I'm a lot more sympathetic to the government's position with respect to the first supervised period in light of Cornell-Johnson. But, you know, if the government concedes what Mr. Rhodes has indicated that that's not what happened here, that the court was clearly focused on the second term, then how do we even get back to the first? I don't know if it was clear to anybody in the courtroom which period of supervised release the court was focused on, as Mr. Rhodes said. But you, in your brief, and what I understood, you have stated that. You are focused on the second one. We have stated that in our brief, Your Honor. That is correct. Okay. So? And given that, we still think that even though the period of supervised release, the second one, the one imposed June 6th of 2008, had not begun to run, the statutes don't require that that period begin to run. The statute talks about a court may revoke a period of supervised release and impose additional imprisonment. It doesn't say the court is required to invoke before imposing additional imprisonment or anything like that. We've got the tolling provision that comes into play occasionally in cases like this. And it just doesn't make any sense from the government's perspective, Your Honors, for a district court not to be able to require defendants serve more time in prison upon learning of further supervised release violations. What about Mr. Rhodes' comment that, in fact, the defendant here has, in fact, already been punished for what she did because she was indicted in Spokane, I think it was, but I may be wrong about that. No, that's correct. An 84-month sentence or something, isn't that sufficient? Well, as we know, when courts are looking at supervised release revocations and the type of sentence to impose, their re-sentencing really is an impact or related to the original sentence. The original sentence that Judge Moy imposed for embezzlement in Montana is the basis for his sentence here. And as we know from the record, he was not much less than incensed about what he characterized as an abuse of trust by this defendant when he gave her time to report and actually gave her a prior period of supervised release. So it was that abuse of trust, of the court's trust, and the conditions of supervised release that Judge Molloy had imposed originally that formed the basis for this sentence. And so that's a long way of saying that... I agree with all of that, but back to Mr. Rhodes' point here. We've got, you know, what do we hang our hat on here? We've got to have jurisdiction. You agree that the first term was not discussed. You didn't brief it. The district court didn't argue it. The second term hadn't commenced. There seems to be a hiatus here, I understand, as a matter of policy that it doesn't make any sense... Right, that's correct. ...to have this vacuum, if you will, in which she can do whatever she wants. Yes. Putting aside for a moment what happened in Spokane and so on, what do we hang our hat on here? You know, even if we were disposed to agree with the government, what do we hang our hat on? I think what we're trying to hang our hat on, Your Honor, is the lack of authority to the contrary. There's nothing in the statutes, and we can't find any cases, and I don't think the defense did either, that says Judge Molloy was not allowed to revoke that period of supervised release, as he did. So, in other words, if you have this pending supervised release hasn't commenced, the judge can revoke that. Makes sense. It does. On the other hand, would you just refer to the statute? Is that the authority for that? Or is it somewhere in the penumbra of the ether of the Ninth Amendment, or something like that? We're just looking at the statute and the dearth of authority to the contrary, Your Honor, and hoping that this court will see the policy at play here, and conclude that district courts should have this authority in situations like this. Well, it might. It should. I mean, it would be the best. We don't know whether the statute says that. I mean, that's... We can't draft a statute. Isn't your real problem the timing, though? Doesn't a violation have to occur during the period of supervised release to justify revocation? Your Honor, some of the cases we talked about in our brief say that the violation does have to occur during that time period. But in this case, this woman actually hid her conduct from the court. And we're trying to look, not so much at this case, but perhaps the next case. That sounds like a lot of thieves I've met. I think you're right, Your Honor. Well, I mean, leaving aside what happened in this case, what's wrong with the idea from Cornell Johnson that the court retained some jurisdiction over the first... the first period of supervised release? I think that really makes sense. So if the court had jurisdiction, then isn't it a... We could either demand for the court to reconsider that, or if the court has the power to do it, then we can deem the issue perhaps waived as well. I think you're right, Your Honor. I don't know. I think you're right. And I'm just trying to envision or think of a situation where, like this, if Ms. Wing, as she did, had her supervised release revoked and she was not prosecuted by Spokane, she goes to jail. And while she's in jail, the probation officer finds out about the Montana conduct, which is what happened here. Is Judge Malloy required to wait for her to get out of jail for that new supervised release period to commence before he can get her arrested and bring her back? That's what Mr. Rhodes is arguing, that he just has to wait. And why would the court have to wait in this situation where there's a period of supervised release that the court has revoked and it learns about additional conduct warranting further penalty? I think that's what we're faced with. Do you agree with Judge Thomas's suggestion that notwithstanding the facts in the case that Cornell Johnson gives us at least something to hang our hat on, so to use that term, that it continues to have some effect even though the court didn't refer to it and you didn't refer to it in your brief? Does that give jurisdiction? You can consider that, Your Honor, yes. Or if Mr. Rhodes is right and the district court lacked jurisdiction to do what it did, I suppose the government could make that argument in revoking the first one again, huh? I think we could. Perhaps. Well, we'd probably see you again here with Mr. Rhodes. I'm afraid so. Could I be designated again? Could we see you again? I'll be sitting in Montana. I think we have your argument in hand, Mr. McGlynn. Any further questions? Thank you very much, Your Honors. Going first to the issue of what term the supervised release was revoked, that ER 74 is the petition that was filed on November 25th of 2008. In the petition, this is a standard blank to fill in. It says, Date Supervision Commenced, November 26th of 2008. Right, but if you'd raised that issue in front of Judge Malloy, he would have cured it right then. That's why district judges get kind of angry with us and with you for raising issues that you don't present there than coming back and saying, why didn't you present it? You already said that. You don't need to respond any further. But I guess I'm just worried. I mean, this seems awfully hyper-technical. It just seems as though that in the sense that there can't be a gap under which the courts have no power to punish this kind of conduct. I don't understand that as a matter of statutory construction, so help me. Well, first, and I know the court understands this, but Ms. Wing has been punished. She's serving a prison sentence out of her own free will. She is, but that doesn't deprive Judge Malloy of his ability if this were continuing if this conduct were to impose the original sentence which he allowed her to go out on supervised release. She was punished in the first instance by Judge Malloy. Part of that punishment he allowed her to go out on supervised release. So it's not double punishment. First, with respect to the gap in statute? That's what concerns me. What the court is suggesting or alluding to, as I understand it, and what the government's maintaining is this just isn't fair, this isn't right, this isn't equitable, and the Supreme Court was eminently clear in the Johnson case that equity is not part of the supervised release statutes. I understand that, but it just seems to me that there can't be a gap. I don't think Congress would have intended for there to be a loophole like this in the coverage of between the first and second period of supervised release where there was conduct that could remain untouched. Well, that's why the new prosecution is so important and if Congress is concerned about what's been suggested as a gap, then it's Congress' obligation to step in and fill the gap. The court can't do that. The Cornell-Johnson case is so clear on that because there somebody served excessive prison time, and so I think at a common sense level, most people would agree, the person on the street corner would say, well, just knock that time off of their supervised release term. That's the fair thing to do, yet the court said no, you have to look at the statutory definitions of when a supervised release term commences, and that's upon release from imprisonment. And while that may not be fair and that's not the equitable result, that's the law. You're saying that the Ninth Circuit can't legislate from the bench? You know, you guys ask us to do that every other week. I'm really pleased to hear that. And the government keeps saying that we have a lack of authority, that Ms. Wing's not pointing to authority, the authority are the statutes, 3583. No, but I think Judge Bullock probably had continuing jurisdiction, some form of continuing jurisdiction based upon the first period of whether he had the power then to revoke the second period based on that, maybe a separate question, or whether or not he had the power on the first period release to revisit that question. That I don't know. Well, that's why I point to ER 74, where clearly the petition is alleging it's the second term, the November 26 term that is subject to the allegations supporting revocation. And if you go to ER 38, which is the violations in that petition. So there's no doubt it was the second term that was being revoked. With respect to the idea that there was some continuing jurisdiction, again, the court revoked that first term, the supervised release. It's over. But the court was not aware of what she had done. So I guess what we're wrestling with is if the court has been grossly deceived and revoked without information that was needed to make a proper decision, whether Cornell Johnson or some other case confers some kind of a continuing right on the part of the court to reconsider what it did. It does not. First, that first term has been eliminated, substituted with a prison term and a second term of supervised release. And while that may seem unfair to the court or to the government, it would be also unfair to create some sort of law where if Ms. Wing were to come out and start successfully serving her second term of supervised release and have no violations, 100% compliance during that term, and then it's discovered that during her first already revoked term, there was all sorts of malfeasance on her part. The government and the court can somehow reach back and basically reenact somehow raised from the dead that already revoked term. The law wouldn't permit that and that term has been expired. You're describing the United States tax code. And the tax code perhaps permits that, but the statutes here don't. But the authority of the court emanates from first the respect to the criminal conviction and the imposition of sentence. And this isn't the case in which the sentence has been exceeded or the maximum sentence has been exceeded. This was the term of the court in opposing sense we're talking about. So it's not precisely a question of statutory interpretation here or statutory prohibition. It would be in the sense of the term has been revoked. It's been terminated. Well, yes, by order of the court. I mean, the court can reconsider the order. I suppose you file motions to reconsider revocations from time to time. It's the court's revocation that's at issue, not a statutory imposition or limitation of Congress. And that's why we would maintain there's a lack of jurisdiction because that term's been revoked, but it'd also be unfair to, in essence, go back in time and as I said, raised from the dead something that's already been revoked and substituted with the prison term. The government keeps saying we're not offering on-point cases. We are. As Judge Hogan alluded to, we cited case after case where the issue was, did the violations occur during the term of supervision and was the petition filed before the term expired? And those cases while not factually exactly on point, they're similar in terms of the legal structure. And second, the government's the party obligated with establishing jurisdiction. So the argument that we have to somehow show that there was not jurisdiction is not the proper legal framework. The burden's on the government, and it's failed to do so under the statutes. Okay. Thank you very much for your arguments. Unless there are further questions, it's an interesting question. The case is sure to be submitted for decision.
judges: Hogan, Thomas, Smith M.